08-20926.rr

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**
Miami Division

Case Number: 08-20926-CV-ALTONAGA/BROWN

OSCAR CORTES,

    Plaintiff,

vs.

LINDA SWACINA, DISTRICT DIRECTOR,
UNITED STATES CITIZENSHIP &
IMMIGRATION SERVICES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**This matter** is before this Court on Plaintiff's Motion for Attorneys Fees (D.E. 8). The Court has considered the motion, the response, the reply and all pertinent materials in the file.

### Facts

Plaintiff commenced this action on April 4, 2008 by filing a Request for Hearing ("Complaint") pursuant to 8 U.S.C. §1447(b).[1]  Plaintiff alleged that he was interviewed by a

---

[1]This section provides as follows:

> (b) Request for hearing before district court
>
> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

1

Naturalization Examiner on March 31, 2006, and that more than 120 days had elapsed since the examination without Defendant United States Citizenship and Immigration Service ("USCIS") having rendered a decision on Plaintiff's application for naturalization.

On April 7, 2008 at 8:39 a.m., the U.S. Attorneys Office filed a Notice of Appearance on behalf of the Defendants. At 12:53 p.m. that same day, the Honorable Cecilia M. Altonaga entered an Order remanding the case to the Defendants to make a determination on Plaintiff's application for naturalization within 120 days of the issuance of the Order. According to the Response, Plaintiff provided the U.S. Attorney with a copy of the Order on the dame day it was issued. Resp. p. 1. However, Defendants further state that it was not until April 10, 2008, that "the United States Attorney's Office, Southern District of Florida, accepted service of the Complaint and Summons." Resp. p. 2.

On April 15, 2008, Defendant FBI completed the name-check of Plaintiff in accordance with its "normal" (as opposed to expedited) protocol with the National Name Check Program. See Cannon Decl. ¶43.[2] On April 22, 2008, the results of the name check were disclosed to Defendant USCIS. On May 22, 2008, Defendant USCIS approved Plaintiff's application for naturalization and on May 30, 2008, Plaintiff filed his Notice of Filing Copy of Form N-400 Approval.

On June 11, 2008, Plaintiff filed this Motion for Attorney's Fees pursuant to the Equal Access to Justice Act ("EAJA").

## Discussion

The EAJA provides for an award of fees to a "prevailing party" "incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against

---

[2]The name check request with respect to Plaintiff had been received by the FBI from USCIS on or about December 29, 2005. Cannon Decl. ¶43.

2

the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A)(2006).

### I. Prevailing Party

Defendants initially argue that Plaintiff is not entitled to a fee award because he is not a "prevailing party." A "prevailing party" is "one who has been awarded some relief by the Court," and a plaintiff must receive "at least some relief on the merits of his claim before he can be said to prevail." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health and Human Resources, 532 U.S. 598, 603-04 (2001). In Buckhannon, the Court rejected the "catalyst theory" of awarding fees to a plaintiff, and found that there must be a "judicially sanctioned change in the legal relationship of the parties" in order for fees to be properly awarded. Id. at 605 (emphasis added).

In support of their position, Defendants distinguish several of the cases cited by Plaintiff in which fees were awarded, by arguing that in those cases "the Defendants resisted Plaintiff's position invoking (if not provoking) the coercive power of the Court," by, for example, answering the complaint or filing a motion to dismiss. Resp. p. 3-4. Defendants further maintain that in this case, "Plaintiff notified (informally and formally) the Defendants of the action only after the Court had already ordered the case remanded," and "the United States Attorney's Office, Southern District of Florida, did not accept service of the Complaint and Summons until three days after the case had been remanded." Id. at 4. Although there is nothing in the court record (other than Defendants' Response) which shows when service was "accepted" by the Defendants, there is a Notice of Appearance filed by the United States Attorney's Office on behalf of the Defendants on April 7, 2008 at 8:39 a.m., which precedes the Court issuing its Order remanding the case and ordering Defendants to make a determination on Plaintiff's petition. On that date, Defendants were at least

3

"informally" notified of the Complaint, and, according to the Response, later that day were notified of the Order. Although it is true that the matter was remanded before Defendants were formally served and had an opportunity to file a response to the complaint, that fact is not dispositive. See Shalash v. Mukasey, No. 07 C 298, 2008 WL 4210654, at * 5 (N.D. Ill. 2008) (stating that "the fact that Defendants were never required to file a written response to Plaintiff's original petition does not change [the analysis of whether the parties' legal relationship changed from the court's mandate to the agency to expedite processing of the plaintiff's application] because the violation of Section 1447 was clear on its face.").

Defendants argue that their action in approving the Plaintiff's application was a "voluntary" act which achieved the result desired by Plaintiff, and as such Plaintiff should not be considered a "prevailing party." See Morillo-Cedron v. District Director for the U.S. Citizenship & Immigration Servs., 452 F.3d 1254, 1257 (11th Cir. 2006). This Court rejects that position. In Morillo-Cedron, the Court issued an order to show cause why mandamus relief required should not be granted, and the Government subsequently voluntarily granted the plaintiffs the relief they sought. 452 F.3d at 1254. This is distinguishable from the instant case in which the court actually ordered Defendants to perform within a specific time period.

In deciding to remand Plaintiff Cortes' case, Judge Altonaga followed the reasoning applied in Silebi de Donado v. Swacina, 486 F. Supp. 2d 1360 (S.D. Fla. 2007), where Chief Judge Moreno, in reviewing a similar complaint, denied the USCIS's motion to dismiss and remanded the case, ordering the government to make a decision on the plaintiff's application within 120 days from the date of that order. Id. at 1365. In subsequently granting the plaintiff's motion for attorney's fees, Chief Judge Moreno found the decisions in Buckhannon and Morillo-Cedron to be distinguishable because in those cases the defendants' actions were "purely voluntary," whereas in the case before

it, the Court's order "created a material alternation of the legal relationship of the parties by imposing an obligation upon the Defendants to comply by a specific deadline." Silebi de Donado v. Swacina, No. 07-20190-CIV-MORENO, slip op. at 5 (S.D. Fla. Sept. 17, 2007) (citing Alghamdi v. Ridge, No. 05-14047, 2006 U.S. Dist. LEXIS 68498, at * 20 (N.D. Fla. 2006)).[3] The same reasoning applies here.

Defendants cite Feldman v. Gonzales, 1:07-CV-1694-RWS, 2008 WL 915524 (N.D. Ga. April 2, 2008), where the court had entered an order remanding the plaintiff's application to the USCIS with instructions that the USCIS expeditiously reach a determination on Plaintiff's application upon the completion by the FBI of Plaintiff's name and background check, and to provide a status report regarding the application within ninety (90) days of the entry of the order. Id. at *1. Before the end of the 90 days, the application was approved. Id. In denying the plaintiff's motion for fees, the court found that its order "did not alter the position of the USCIS. Rather, the Order contemplated that the USCIS would not act on the application until completion of the name and background check by the FBI," and to the extent the order "acted as a catalyst to move Plaintiff's application along, that was insufficient to make plaintiff a prevailing party." Id. at *2.

---

[3]In Alghamdi, the court additionally found that the defendants could not have acted "voluntarily" because once the plaintiff applied to the court for relief, the court obtained exclusive jurisdiction to act, and the defendants could only subsequently act if the court remanded the matter to the defendants for further action. 2006 U.S. Dist. LEXIS 68498, at *17. Although the Eleventh Circuit has not yet addressed this issue, and the district courts are in conflict, the Fourth and Ninth Circuits have agreed with this position. See Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007); United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004). See also Aronov v. Chertoff, 536 F.3d 30, 39 (1st Cir. 2008) ("because of jurisdictional element, the district court could have reasonably concluded that it was ultimately the remand order, not the agency's concession, that brought about the material change in the parties' relationship and 'place[d] the weight of judicial authority' on the agreed-upon alteration in [plaintiff's] legal status") (citation omitted); but see Fatayer v. Swacina, No. 2:07-cv-527-FtM-29DNF, 2008 WL 4279688, at *3 (M.D. Fla. Sept. 15, 2008).

The instant case is clearly distinguishable. Although Defendant USCIS maintains that it also was merely waiting for the FBI check to be completed, and the application was approved once that "routine" procedure was followed, Judge Altonaga's Order did not give the Defendants the leeway to wait until whatever date that check may have been completed. Rather, the Court's Order, like Judge Moreno's Order, changed the legal relationship between the parties in that it <u>required</u> action in 120 days, without referencing the status of any FBI background check.

Defendants argue that the Court's Order in this case "had no evident impact upon the FBI's completion of its name-check duties or of the USCIS adjudication (approval) of Plaintiff's application for naturalization," maintaining that the FBI followed its "normal" procedure in completing its non-expedited protocol, then followed its "normal" procedure in reporting its findings to the USCIS. Resp. p. 5. Although USCIS maintains that it then followed "routine" procedure in adjudicating Plaintiff's application, this "routine" runs counter to USCIS regulations, which state that the examination (which triggers the 120 day period) will take place "only after the Service has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. §335.2(b) (2006). <u>See</u> also <u>Silebi de Donado</u>, 486 F. Supp. 2d at 1364.

Why Plaintiff's examination took place in 2006 is unexplained. However, what is a fact is that Plaintiff's application was not adjudicated until <u>after</u> the Court issued its Order requiring the USCIS to do so within a specific time frame. What Defendants choose to ignore is that they were on notice of and under compulsion of the Court's Order, regardless of whether they were also complying with their "routine" procedure. As the court noted in <u>Alghamdi</u>, "[s]ection 1447(b) is ... not concerned with whether USCIS voluntarily grants or denies an application for naturalization; rather, §1447(b) is concerned solely with the *timeliness* of that decision." 2006 U.S. Dist. LEXIS

6

68498, at ** 15-16 (emphasis in original); see also Aboushaban v. Mueller, 475 F. Supp. 2d 943 (N.D. Cal. 2007); Shalash v. Mukasey, No. 07 C 298, 2008 WL 4210654, at * 5 (N.D. Ill. 2008).

The Court finds that Plaintiff is a "prevailing party" for purposes of the EAJA.

## II. Substantial Justification

Defendants next argue that their position in Plaintiff's case was substantially justified. In order for this to be so, Defendants must show that their position was "justified in substance or in the main - that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); see also United States v. Jones, 125 F.3d 1418, 1425 (11th Cir. 1997).

As noted, Defendants took no position in the actual case. As to their pre-litigation conduct, Defendants argue that their conduct was reasonable because of the mandate that they conduct an extensive "examination" process and the time required for background checks, which has created a backlog. This argument was rejected by Chief Judge Moreno in Silebi de Donado, in which the Court noted that, as in this case, Defendants violated their own regulations by having a naturalization examination of the plaintiff prior to the completion of the background check. Silebi de Donado v. Swacina, No. 07-20190-CIV-MORENO, slip op. at 6 (S.D. Fla. Sept. 17, 2007).

In rejecting the same argument, the First Circuit Court of Appeals stated that "[i] light of the 120-day statutory directive, the agency's long delay (over four times the statutory period), and the absence of any evidence that the government tried to expedite [plaintiff's] application to comply with the statute, the government's conduct toward [plaintiff] can only be classified as unreasonable and not substantially justified." Aronov, 536 F.3d at 48; see also Aarda v. United States Citizenship and Immigration Svcs., No. 06-1561 (RHK/AJB), 2008 WL 974916, at *5 (D. Minn. April 8, 2008) (rejecting "backlog" argument). In this case, Defendants offer no reasons why Plaintiff's background check was more extensive than any other, and in fact, emphasize that the FBI followed its "normal,"

7

as opposed to "expedited" fingerprint check with respect to Plaintiff Cortes, even after it became aware of the Court's remand order.

Defendants additionally argue that the term "examination" in § 1447 (which triggers the 120-day period) does not refer to the agency's initial interview of the applicant, but rather encompasses the entire process of determining whether the application should be granted. Chief Judge Moreno also rejected this argument, based on the majority view in the Southern District of Florida that "examination" refers to the initial USCIS interview. Id. at. p. 7. Chief Judge Moreno has since reaffirmed that finding. See Diaz v. Gonzalez, No. 07-22360-CIV-MORENO, 2007 WL 4463492, at *2 (S. D. Fla. Dec. 17, 2007) (citations omitted); see also Walji v. Gonzales, 500 F.3d 432 (5th Cir. 2007)(surveying district court decisions and adopting majority view).

This Court rejects Defendants' arguments and finds that the Defendants' conduct was not substantially justified.[4]

## RECOMMENDATION

Based on the foregoing, this Court respectfully recommends that Plaintiff's Motion for Attorneys Fees be **GRANTED**, and that Defendants be allowed ten (10) days in which to file a supplemental response addressing the amount of fees requested.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847

---

[4]The Court additionally finds that there are no "special circumstances" which would make an award of attorneys fees in this case unjust.

F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of October, 2008.

_____
STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable Cecilia M. Altonaga
       Counsel of record